IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| ALLOY POLYMERS, INC., | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 3:11CV119-HEH |
| AMPACET CORPORATION, | ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION
(Defendant's Motion to Dismiss and to Compel Arbitration)

This case involves the arbitrability of claims of breach of a contract for the processing of plastic compounds. It is presently before the Court on the Defendant's Motion to Dismiss and to Compel Arbitration. The issue for the Court's resolution is whether the underlying contract, referred to as the "Toll Processing Agreement" ("TPA" or "Agreement"), requires that the parties' differences be resolved by arbitration.

This declaratory judgment action was originally filed in the Circuit Court for the City of Richmond, Virginia. It was timely removed to this Court, which has diversity jurisdiction under 28 U.S.C. § 1332. Both parties have filed detailed memoranda of law and exhibits supporting their respective positions. This Court will dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid in the decisional process.

Although this case turns primarily on the terms of the Agreement and the application of arbitration jurisprudence, some preliminary background is informative.

Both parties, Alloy Polymers, Inc. ("Alloy") and Ampacet Corporation ("Ampacet") are in the business of processing plastic compounds. The immediate controversy evolves from an agreement executed between them in May 2006. Under its terms, Alloy would process raw materials supplied by Ampacet at Alloy's Crockett, Texas plant. These services included not only processing of material but also secure storage, protection, and shipment of the finished product. In exchange, Ampacet was required to pay for such services and order products from Alloy in specified quantities at set prices for a period of four years.

Ampacet contends that it experienced material breaches of the Agreement in the years that followed, culminating in a letter of October 27, 2009 to the Chief Executive Officer of Alloy. In that correspondence, Ampacet stated, "[w]e are formally providing Alloy with notice of its material breach and our intent to cancel, terminate and otherwise end this Agreement due to said repeated material breaches. Therefore, subject to the termination provisions of Article 3.2 [of the Agreement], we will plan to terminate this Agreement effective November 30, 2009." (Def.'s Mem. Supp. Mot. Dismiss and Compel Arbitration, Fielding Aff. Ex. B, at 3, ECF No. 4-1.) Notwithstanding this notification of default, the parties appear to have continued to conduct business. Whether their dealings were on the same terms and conditions is a subject of dispute.

According to Ampacet, Alloy's performance deteriorated and on August 6, 2010, Ampacet notified Alloy that it would not place any new orders with the Crockett plant, demanded all stored materials be returned, and sought arbitration with respect to its claims of nonperformance. The parties, however, were able to reach some form of

2

interim agreement which allowed Alloy to continue processing Ampacet's raw materials. When the parties were later unable to reach an agreement with respect to Ampacet's claims of missing materials and insufficient compensation for alleged breaches of the contract, Ampacet renewed its arbitration demand on January 4, 2011. Because Alloy contests the arbitrability of Ampacet's claims, this lawsuit followed.

The Court's analysis begins with a determination of whether Ampacet's asserted claims are arbitrable under the terms of the Agreement.[1] Article 12 of that Agreement provides, in pertinent part, that

> Any and all controversies, claims and differences arising out of or relating to the Services thereto which cannot be settled by good faith negotiation between the parties will be finally settled by binding arbitration brought within six (6) months of the competition of Services in accordance with the then existing commercial rules of the American Arbitration Association . . . .

(Compl. Ex. A 18–19, ECF No. 1-1.)

Ampacet advances eight claims, of which six relate to work performed at the Crockett plant. These claims generically include failure to secure and protect materials, damage to finished products and raw materials, overcharges for processing, and failure to account for and return products and materials. Ampacet is seeking approximately $436,000 in damages. (Def.'s Reply Mem. Supp. Mot. Dismiss and Compel Arbitration 2.)

---

[1] "In the Fourth Circuit, a litigant can compel arbitration under the [Federal Arbitration Act, 9 U.S.C. § 1–16] if he can demonstrate '(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate a foreign commerce, and 4) the failure, neglect or refusal of the defendant to arbitrate the dispute.'" *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500–01 (4th Cir. 2002) (quoting *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991)).

3

The remaining two claims pertain to services performed at Alloy's Richmond, Virginia facility. Ampacet concedes that these claims are governed by purchase orders outside the Agreement and are therefore not subject to mandatory arbitration. This Court agrees.

With respect to the six claims arising from services provided at the Crockett plant, Alloy disagrees that they are subject to mandatory arbitration under Article 12.1. Initially, Alloy maintains that the central issue is "[d]id the parties agree to arbitrate the question of whether Ampacet terminated the Toll Processing Agreement . . .?" (Pl.'s Mem. Opp. Def.'s Mot. Dismiss and Compel Arbitration 2, ECF No. 8.) In Alloy's view, this is a "gateway" issue to be decided by the court, not the arbitrator. (*Id.*)

Alternatively, Alloy argues that Ampacet failed to timely perfect its demand for arbitration as required under Article 12.1 of the Agreement. Alloy, however, candidly concedes that it holds the weaker hand on this issue. "[Q]uestions of mere delay, laches, statute of limitations, and untimeliness raised to defeat the compelled arbitration are issues of procedural arbitrability exclusively reserved for resolution by the arbitrator." *Glass v. Kidder Peabody & Co., Inc.*, 114 F.3d 446, 456 (4th Cir. 1997); *see also Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84–85, 123 S. Ct. 588, 592 (2002). This Court will decline the invitation to reverse the polarity of settled case law on this issue.

As to Alloy's contention that the Agreement was terminated by Ampacet, relieving the parties of the obligation of mandatory arbitration, Ampacet disagrees that this is a gateway issue for the Court. Aside from dismissing this contention as factually

4

and legally inaccurate, Ampacet draws the Court's attention to Article 24.7 of the Agreement which states, in pertinent part, that "[Article] 12 [Dispute Resolution] shall survive termination or expiration of this Tolling Agreement." (Compl. Ex. A 26.)

In his dissenting opinion in *Rent-A-Center, West, Inc. v. Jackson*, Justice Stevens captures the essence of gateway matters. "Quintessential gateway matters include 'whether the parties have a valid arbitration agreement at all,' . . . 'whether the parties are bound by a given arbitration clause,' and 'whether an arbitration clause in a concededly binding contract applies to a particular type of controversy.'" 130 S. Ct. 2772, 2782 (2010) (Stevens, J., dissenting) (internal citations omitted).

In *Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444, 123 S. Ct. 2402 (2003), citied by Justice Stevens in *Rent-A-Center*, the Court further clarified the concept of a gateway matter. In *Bazzle*, the Court began its analysis by restating the fossilized principle that "if there is doubt . . . about the 'scope of arbitrable issues'—we should resolve that doubt 'in favor of arbitration.'" *Bazzle*, 539 U.S. at 452, 123 S. Ct. at 2407 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626, 105 S. Ct. 3346, 3353 (1995)). The question before the Court in *Bazzle* was whether or not the underlying contract forbade class arbitration. The Court concluded that this was not a gateway matter since it did not turn on whether the parties had a *valid* arbitration agreement at all. *Bazzle*, 539 U.S. at 452, 123 S. Ct. at 2407 (emphasis added).

More recently in *Rent-A-Center*, the U.S. Supreme Court brought the teachings of *Bazzle* into bold relief. Speaking for the Court in *Rent-A-Center*, Justice Scalia noted that courts intervene only when the basis of the challenge is directed specifically to the

5

validity of the agreement to arbitrate—as opposed to the validity of the contract as a whole. *Rent-A-Center*, 130 S. Ct. at 2778–79. A close reading of the Court's analysis in *Rent-A-Center* implies that validity denotes the legal soundness of the agreement to arbitrate, i.e., was it fraudulently induced, or was it unconscionable on its face. *Id.* Neither party in the immediate case contends that Article 12.1 is either invalid or legally unenforceable. There is also no dispute that the textual scope of Article 12.1 clearly embraces six of Ampacet's claims. The import of Alloy's defense is that the Agreement was unilaterally terminated by Ampacet. Unless the defense is specifically directed at the arbitration clause, a contract revocation defense is generally a matter for the arbitrator. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–04, 87 S. Ct. 1801, 1806 (1967); *see also Rent-A-Center*, 130 S. Ct. at 2781. This is such a case.

Even if the issue of termination of the Agreement was deemed to be antecedent to the enforceability of Article 12.1, the Court is of the opinion that this defense is foreclosed by the claim survival language of Article 24.7.

Ampacet has therefore satisfied all the requirements recited in *Adkins v. Labor Ready, Inc.* to compel arbitration. The authority to resolve Alloy's procedural defenses resides with the arbitrator. Accordingly, Ampacet's Motion to Dismiss and to Compel Arbitration will be granted.

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
United States District Judge

Date: March 24, 2011
Richmond, VA